Davies, Appellant, *v.* Davies.

48

Argued April 30, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused August 6, 1963.

*Fred Lowenschuss,* with him *Snyder & Lowenschuss,* for appellant.

*Max E. Cohen,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, July 2, 1963:
The manner in which the sole issue in this case arrived at a decisional stage is procedurally complicated but only those details which have a direct bearing on the appellate question will be recited. Sophie Davies, the plaintiff here, was a passenger in an automobile owned and being operated by her husband Albert V. Davies on April 5, 1953, when it collided with

an automobile owned and being operated by Wiley B. Dotson, and in which his wife, Gertrude Dotson, was a passenger. Both Mrs. Davies and Mrs. Dotson were injured. Albert V. Davies was killed.

On July 10, 1961, Sophie Davies brought an action of trespass in the Court of Common Pleas No. 3 of Philadelphia County, against the estate of her husband, her son, Albert T. Davies being administrator thereof. The Nationwide Mutual Insurance Company, which carried the insurance on the Davies car, defended the suit under the terms of its policy, filing preliminary objections which pleaded the statute of limitations. The court overruled the preliminary objections and Nationwide then prepared an answer containing new matter which raised as an affirmative defense the statute of limitations and laches.

The defendant-administrator, Albert T. Davies, refused to sign the verification to the answer because it contained, he asserted, averments which were contrary to fact. Nationwide refused to defend and, in consequence, on December 19, 1961, the plaintiff obtained a judgment by default against the Davies Estate, damages being assessed in the sum of $11,149.80.

On June 19, 1962, a writ of execution issued, designating Nationwide as garnishee. Nationwide again raised the defense of statute of limitations. In reply to the new matter in the garnishee's answer, the plaintiff filed what it called "Additional Interrogatories to the Above-Named Garnishee," seeking facts and information regarding certain developments which followed the accident. Nationwide filed a motion for judgment on the pleadings, together with preliminary objections to the additional interrogatories advanced by the plaintiff. On January 17, 1963, the court sustained the garnishee's preliminary objections and its motion for judgment on the pleadings, dismissing the plaintiff's writ of execution. This appeal followed.

In order to understand what is involved here it must be stated that Mrs. Wiley B. Dotson who, it will be remembered, was also injured in the accident, had filed a suit against the Davies Estate and on March 16, 1956 a settlement was reached whereby she received $9,000. The release she signed purported to release the Davies Estate from all claims arising out of the accident.

The policy issued by Nationwide on the Davies car contained the provision: "The insured shall cooperate with the insurance company and upon the company's request shall attend hearings and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the intended witnesses and in the conduct of suits. . . ."

Nationwide argues that since Albert T. Davies, the defendant-administrator, refused to sign the verification to the original answer to the Sophie Davies complaint, it has been relieved of all responsibilities in the matter. In refutation, the plaintiff contends that her suit was delayed in its filing because when Nationwide (the policy being a family one) filed suit in behalf of Sophie Davies against Wiley B. Dotson in the United States District Court as of July 30, 1954, it failed to include the Davies Estate as a defendant. The defendant Dotson finally got the Estate into the lawsuit by joining it as a third party defendant. In this turn of affairs, Nationwide found itself defending and prosecuting the same claim. It was shortly after this joinder of the Davies Estate as a party defendant that the settlement between Dotson and the Davies Estate was effected.

When the suit, which had been entered in the United States District Court, was listed for trial, Nationwide introduced the release signed by Dotson and a summary judgment was entered in behalf of the Davies Estate.

In the answer and new matter filed by Nationwide to the plaintiff's complaint in trespass in the court of common pleas of Philadelphia County, Nationwide averred: "9. (a) Defendant further avers that Plaintiff's alleged cause of action arose more than eight years prior to the Complaint in this case being filed. (b) The said delay was entirely due to the plaintiff and will seriously prejudice the defendant in the trial of this case. (c) Defendant avers that said action is also barred by laches."

The defendant-administrator, in refusing to sign the verification to the answer and new matter, said: "I will sign any paper you want which says that my father's estate is not to blame for the accident. But, I cannot sign a paper which says that a law stops any suit because I feel that we have no right to say that since my mother was given the stall and the insurance company made her sue later."

If, because of all the legal procedures herein recited, Mrs. Sophie Davies was misled and misdirected in the matter of filing her suit against the estate of her husband, the defendant-administrator was warranted in refusing to swear to an assertion which he believed to be untrue.

The plaintiff submits that Nationwide, when it failed to join the Davies Estate as a defendant at the time it undertook to file the plaintiff's original suit, breached an obligation it owed Sophie Davies as one of the beneficiaries of the Nationwide policy; also, that when it obtained a general release from Dotson, releasing the Davies Estate from all liability, it additionally prejudiced the rights of the plaintiff. If these averments of the plaintiff are true (and, in the posture of the case when the court below entered summary judgment for the Davies Estate, the evidence is to be construed in the light most favorable to the appellant*), it is quite

---

* *Sack v. Glens Falls Insurance Co.*, 356 **Pa. 487.**

clear that Sophie Davies was prejudiced to her disadvantage in the assertion of her legal rights as a result of the action of Nationwide in representing both sides of a lawsuit.

The record demonstrates almost conclusively that Sophie Davies was a wholly innocent and helpless party in all the legal representations, strategic pleadings and maneuverings of the Nationwide Mutual Insurance Company. Mrs. Davies was as much entitled to be protected by Nationwide under the Davies policy in her suit against the estate as was the estate to be protected against the suit filed by Mrs. Dotson. It was not until May, 1961 that Mrs. Davies obtained legal services of her own.

Mrs. Davies had every reason to believe that Nationwide would protect her rights and she had every reason to assume that since an action had been begun in her behalf as early as July 30, 1954, she did not need to be concerned about laches or the statute of limitations, assuming that she was even aware of any such crippling legal intervention. To deny her her day in court because of shortcomings of the insurance company would not only be unsupportable in law but it would constitute a flagrant act of injustice. *Schaffer v. Larzelere*, 410 Pa. 402.

When an insurance company undertakes to defend and prosecute actions in behalf of its insured, it will be required to exercise diligence and care to the end that its client does not suffer through inattention or, worse yet, through misrepresentation or equivocation. The demand of Nationwide that Albert T. Davies take an oath to a statement which, according to the evidence, was demonstrably false, cannot give it any legal right to withdraw from a · commitment in the policy, under the theory of non-cooperation. The lower court apparently was of the impression that the defendant-administrator was required to sign the an-

swer, regardless of its contents: "We have carefully considered the possibility that the basis of the defendant's objection to the proposed pleading was that it asked him to swear to something which he believed to be untrue. However, such objection was not the one which was raised. It is clear that the defendant took it upon himself to decide that the issue of limitations could not be raised."

The defendant did not say that the insurer could not raise the issue of limitations; he only said that he could not swear that the delay in filing suit against the estate was "entirely due" to the fault of his mother. The defendant had personal knowledge of the insurance company's actions in playing the game on both sides of the net and he could not in conscience declare that somehow or other his mother was responsible for this tennis game of delay and equivocation.

No law worthy of the name should permit an insurer to disclaim a liability by allowing him to demand that the insured assert what is contrary to fact, and then, on the basis of non-cooperation, walk away from the contract. Suppose Nationwide had said under new matter that Mrs. Davies was not injured at all or was not even in the car at the time of the accident, and her son, because of the intimate mother-son relationship, knew of his own personal knowledge that this averment did not comport with the realities. Could the insurance company, in such a situation, wash its hands of all responsibility on the basis that the insured was not cooperating? The answer is obvious.

In the case of *Conroy v. Commercial Casualty Ins. Co.*, 292 Pa. 219, where a question similar to the one at bar arose, this Court said (page 227): "It was the duty of the insurer to conduct the defense of the claim, and within its power to determine the course of action to be followed. If it appeared that the execution of a pleading such as requested was legally re-

quired, so that an available defense could be asserted on trial, then it became the duty of the insured *to* comply with the demand, *if the facts set forth were true*: . . ." (Emphasis supplied). That is the issue: Were the facts set forth in the answer true? The defendant denies that they were. Nor has there been any adjudication that the defendant's denial was disproved.

Furthermore, the failure of the defendant to sign the verification for the reasons given by him did not prevent the insurance company from proceeding with its defense. The Pennsylvania Rules of Civil Procedure 1024(c) provide: "The verification shall be made by one or more of the parties filing the pleading unless all the parties (1) *lack sufficient knowledge or information*, or (2) are outside the jurisdiction. . . . In such cases, the verification may be made by any person having sufficient knowledge or information and belief and shall set forth the source of his information as to matters not stated upon his own knowledge and the reason why the verification is not made by a party." (Emphasis supplied)

If ignorance of the facts excuses a party from executing verification, how much more so is he excused if his knowledge is that the facts are exactly *contrary* to what is stated?

The insurance company had still another string to its bow of defense when it failed to obtain the defendant's signature to the verification. If it was of the belief that the administrator was failing to perform his duties under the law, it could petition the orphans' court for his removal and the appointment of another administrator.

The judgment of the court below is reversed and the record remanded for action not inconsistent with this opinion.

Mr. Justice COHEN and Mr. Justice ROBERTS concur in the result.

Mr. Chief Justice BELL, Mr. Justice BENJAMIN R. JONES and Mr. Justice EAGEN dissent.